IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STI OILFIELD SERVICES, INC. | CASE NO. _____ |
| Plaintiff | |
| vs. | (JUDGE _____) |
| ACCESS MIDSTREAM PARTNERS, L.P., APPALACHIA MIDSTREAM SERVICES, L.L.C., CHESAPEAKE OPERATING, INC., and CHESAPEAKE ENGERY CORPORATION, | JURY TRIAL DEMANDED |
| Defendants | ELECTRONICALLY FILED |

## COMPLAINT

NOW COMES, the Plaintiff, STI OILFIELD SERVICES, INC. (hereinafter, "STIOS" and/or "Plaintiff"), by and through its undersigned counsel, and files the instant Complaint against the Defendants, ACCESS MIDSTREAM PARTNERS, L.P. ("ACCESS"), APPALACHIA MIDSTREAM SERVICES, L.L.C. ("APPALACHIA"), CHESAPEAKE OPERATING, INC., ("COI"), and CHESAPEAKE ENGERY CORPORATION ("CEC"), (collectively, the "Defendants"), and in support of said Complaint, avers as follows:

## INTRODUCTION

1.     This is an action by STIOS to recover compensatory and punitive damages, interest, penalties, and attorneys fees against Defendants based upon

their breach of their contractual obligations to STIOS, as well as for their intentional and fraudulent breach of their contractual obligations to STIOS.

## PARTIES

2.      STIOS is a corporation formed under the laws of the State of Texas with its principal place of business located in Jasper, Jasper County, Texas.

3.      ACCESS is a limited partnership formed under the laws of the state of Delaware with a principal place of business located in Oklahoma City, Oklahoma County, Oklahoma.   Upon information and belief, ACCESS is the party responsible for securing bids for the West Side of River Welded, West Side of River Zap-Lok, East Side of River Zap-Lok, and Blackwest Projects.  For ease of reference, STIOS will simply refer to each of those pipeline projects in the aggregate as the "Projects."

4.      APPALACHIA is a limited liability company under the laws of the state of Oklahoma with a principal place of business located in Oklahoma City, Oklahoma County, Oklahoma.  APPALACHIA is an affiliate of ACCESS and, upon information and belief, is the payment provider for the work performed on the Projects for ACCESS.

5.      COI is a corporation formed under the laws of the state of Oklahoma with a principal place of business located in Oklahoma City, Oklahoma County, Oklahoma.

744676.7

6.     CEC is a corporation formed under the laws of the state of Delaware with a principal place of business located in Oklahoma City, Oklahoma County, Oklahoma.  Upon information and belief, CEC is the parent corporation of COI.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds, exclusive of interest and costs, seventy-five thousand dollars ($75,000.00), and is between citizens of different states.

8.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and all parties are subject to personal jurisdiction in this district.

## FACTS

9.     STIOS is an oilfield and pipeline contractor whose primary focus is providing oilfield and pipeline related services throughout the United States.

10.     STIOS routinely provides such oilfield services in states throughout the United States, and previously provided said oilfield services and pipeline construction services to entities then owned and/or controlled by CEC and its related companies.

744676.7

11.     In or about early November of 2011, STIOS and COI, a subsidiary of CEC, entered into a Master Service Agreement ("MSA") for the purpose of becoming an approved vendor for CEC.

12.     In January and May of 2012, respectively, CEC and/or its affiliate, COI, contracted with STIOS to perform certain pipeline improvements in Bradford County, Pennsylvania, more specifically identified as the Rome and the Oilcan projects.

13.     Pursuant to those contracts, CEC and/or its affiliate, COI, agreed to pay for each time a work crew and related equipment needed to be moved from one work-site to another (hereinafter the "move-arounds").

14.      STIOS dutifully performed its obligations under the contracts for the Rome and Oilcan projects by constructing the pipeline improvements as required, but did not receive full payment as promised.

15.     Moreover, CEC and/or its affiliate, COI, failed to pay STIOS for the complete amount owed for the move-arounds.

16.     While STIOS was performing its obligations under its agreements with CEC and/or its affiliate, COI, ACCESS, a separate and distinct entity from CEC and CIO, contacted STIOS to request that STIOS provide proposals for the Projects being constructed by ACCESS in Northeastern Pennsylvania.

744676.7

17.    Based upon numerous representations and warranties that were made to STIOS by ACCESS, its employees, agents and representatives, STIOS agreed to provide bids on the Projects.

18.    Notably, each of these Projects was a separate component of a primary pipeline project being constructed within the northeast quadrant of the state of Pennsylvania, which traversed through the counties of Susquehanna, Tioga, and Bradford, Pennsylvania.

19.    In accordance with STIOS's preparation of its requested proposals for completion of the Projects, and after analysis of the timing of the proposed undertaking and completion of the Projects, it was determined that a substantial percentage of the Projects would be completed during the winter months.

20.    While pipeline construction during the winter months in the southern portion of the United States is not overly problematic, in the northern portion of the United States, including and in particular, the northeast portion of the United States where the Projects were to be completed, completion of said pipeline projects during winter months generally involves issues that are outside of the norm for completion of pipeline projects generally, including issues arising out of or relating to frozen ground conditions.

21.    As a result of the issues with "winter work," it is the general course and conduct of pipeline contractors, including and in particular, pipeline

5

contractors operating in the northeast quadrant of the United States where these particular Projects were ongoing, to increase the standard rates in order to accommodate and account for winter contingencies.

22.     The inclusion of these winter contingencies would essentially "transfer the risk" of the magnitude of winter weather related costs and delays to the contractor.

23.     Alternatively, the owner and/or operator of a pipeline may request that the contractor exclude winter contingencies in their bid processes in order to limit and/or control costs.

24.     However, in that event, it is well known throughout the industry that the risks of weather related costs and delays then fall to the pipeline owner and/or operator and *not* the pipeline contracting company.

25.     By virtue of the weather contingencies being excluded from the bid and/or proposal, STIOS, as the contractor, in accordance with industry standard, was authorized to submit change orders for weather related costs and delays that were incurred as a result of adverse weather conditions.

26.     In preparation of its bid packages for construction of the Projects as requested by ACCESS, STIOS included winter contingencies in its initial bid packages in the usual and customary range.

744676.7

27.    Upon receipt of these initial proposals, ACCESS's company representative, Keith Edmonds, instructed STIOS to resubmit their bid packages and to exclude winter contingencies, with the full acknowledgment that the exclusion of such weather contingencies would transfer the risk of adverse weather conditions and the costs and delays from STIOS, as the contractor, to ACCESS, as the pipeline owner/operator.

28.    In detrimental reliance upon these instructions and in compliance with the requests made by ACCESS's company representative, Keith Edmonds, STIOS submitted a second set of bid packages, which excluded, *inter alia*, winter contingencies, as well as substantially any and all other contingencies.

29.    ACCESS's company representative, Keith Edmonds, advised that, in light of the recent winter events that occurred in the preceding year, ACCESS was willing to and desired to exclude the winter contingencies and accept the risk of potential additional costs associated with weather delays.

30.    Once again, in detrimental reliance upon these instructions from ACCESS's company representative, STIOS modified its proposals and submitted bid proposals, for the Projects, that excluded all contingencies.

31.    Subsequently, STIOS was advised that the modified bid proposals were accepted and that STIOS was authorized to commence construction on the Projects.

744676.7

32.     Almost immediately following the commencement of the construction on the Projects, and particularly at the beginning of the winter months, STIOS encountered substantial weather related delays and increased costs and expenses.

33.     These weather related delays, costs and expenses were not only acknowledged by ACCESS, but were also documented by STIOS.

34.     Notably, in or around January of 2013, in recognition of the weather issues being encountered by STIOS, APPALACHIA, in conjunction with or on behalf of its affiliate, ACCESS, issued a Winter Construction and Stabilization Plan (the "Winter Plan") that substantially changed the specifications for the winter work.

35.     As a result of this change order, STIOS incurred significant costs and expenses to comply with APPALACHIA's Winter Plan, including additional costs for, *inter alia*, snow removal, backfilling, and the provision of heating equipment and environmental material.

36.     In addition to the weather related delays, costs, and expenses, STIOS also incurred additional costs related to the performance of work arising on the field site that was outside the original contracts.

37.     Pursuant to the agreement entered into by and between the parties, including the agreement approved by ACCESS's company representative, Keith

744676.7

Edmonds, STIOS began submitting change order requests to ACCESS for approval.

38.     Based upon representations made by ACCESS to STIOS, according to ACCESS's payment policies and procedures, invoices for the weather related and other contingencies, as well as for work outside the original scope in the contract, submitted via change order would be paid following acknowledgement and approval by ACCESS.

39.     STIOS began this process and began submitting the substantial change orders, which included change orders for work outside the original scope of the contracts.

40.     During this time frame, despite repeated delays in the approval of said change orders, STIOS continued construction of the Project related pipeline improvements, which resulted in STIOS incurring substantial costs and expenses.

41.     Moreover, during this entire time frame, employees, agents and representatives of ACCESS, including Keith Edmonds, advised representatives of STIOS that they were continuing their review of all of STIOS's change order requests, that additional documentation would be necessary before approval, and that ultimately, upon approval of the change order requests, STIOS would be authorized to submit its invoices and receive payment.

744676.7

42.     Additionally, ACCESS and/or APPALACHIA, without a basis in law or in fact, wrongfully retained a percentage of the monies to STIOS for the work that STIOS submitted for payment.

43.     Based upon these and other representations and warranties, once again, STIOS continued its construction of the pipeline improvements, which resulted in STIOS incurring substantial costs.

44.     At no time during this process, which lasted at least nine (9) months, did ACCESS advise or otherwise contend, in any way, that the change order requests submitted by STIOS were excluded and/or precluded from the last bid proposals submitted by STIOS.

45.     Moreover, at no time did ACCESS, its employees, agents or representatives contend, in any way, that the weather contingencies or other contingencies had been assumed by STIOS.

46.     In fact, to the contrary, ACCESS's representative, Keith Edmonds, continued to advise that ACCESS was responsible for the contingencies, which included the weather contingencies.

47.     For months, STIOS continued the construction of the pipeline improvements for the Projects, submitted its invoices for standard charges, and submitted its change order requests.

48.    STIOS also continued to inquire as to the status of approval of the change orders and repeatedly received assurances from ACCESS's representatives that same were in process, that upon final approval, invoices would be authorized, and that same would be paid.

49.    Based upon these continued representations and warranties, STIOS continued with the Projects, ultimately resulting in completion of same in September 2013.

50.    Only at that time, did STIOS receive notice that ACCESS was contemplating denying virtually all of the weather related contingencies submitted by STIOS.

51.    In addition to the submission of winter weather related contingencies, STIOS had also submitted Hurricane Sandy related weather contingencies, which had remained under review and consideration for numerous months.

52.    Ultimately, STIOS received notice that the Hurricane Sandy related contingencies would be approved in substantial part, and paid.

53.    Also, ACCESS, either individually, or in concert with its authorized agents and representatives, issued a "work stoppage" that shut down all of the projects involved in the entirety of the overall pipeline projects being completed in the northeast quadrant of the United States, including, but not limited to, the Projects being performed by STIOS.

744676.7

54.   This "work stoppage" was purportedly due to safety issues associated with various contractors.

55.   STIOS was improperly and unnecessarily subjected to a unilateral "work stoppage," which resulted in substantial additional costs to STIOS and its employees, agents, representatives and subcontractors.

56.   STIOS submitted change orders for the additional costs incurred by STIOS arising out of or related to the work stoppages, which change orders, once again, received delayed treatment and analysis from ACCESS.

57.   Ultimately, ACCESS agreed to accept and approve for payment only a portion of the change orders.  This was not acceptable to STIOS.

58.   STIOS complied with all of its obligations under the aforementioned agreements.

59.   Despite repeated demands by STIOS for payment, Defendants have failed to remit the full and complete balance due to STIOS, including but not limited to, wrongfully retaining a percentage of the monies owed to STIOS and failing to pay for fabrication costs for all projects, which has resulted in the filing of this Complaint.

744676.7

## COUNT I
### Breach of Contract
### STIOS v. CEC and COI (hereinafter "The CHESAPEAKE Defendants")

60.    STIOS incorporates Paragraphs 1 through 59 herein by reference as if more fully set forth at length.

61.    STIOS has fully and satisfactorily discharged all of its contractual duties by delivering the aforementioned work, equipment, and services to the CHESAPEAKE Defendants relating to the Rome and Oilcan projects, and the CHESAPEAKE Defendants have accepted STIOS's work, equipment and services without complaint.

62.    Despite STIOS's repeated demands for payment, the CHESAPEAKE Defendants have breached their contractual obligations to STIOS by failing to tender the principal amounts currently due and owing to STIOS for the work it performed constructing the required pipeline on the Rome and Oilcan projects, as well as failing to fully pay for all move-arounds relating to equipment and crews performing on the Oilcan projects.

63.    The CHESAPEAKE Defendants are contractually obligated to tender the balance due and owing to STIOS is an amount in excess of TWO MILLION DOLLARS ($2,000,000.00).

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against CHESAPEAKE

744676.7

ENGERY CORPORATION and CHESAPEAKE OPERATING, INC. in an amount in excess of TWO MILLION DOLLARS ($2,000,000.00), plus interest, costs, and such other relief this Honorable Court deems just and appropriate.

**COUNT II**
**Unjust Enrichment**
**STIOS v. The CHESAPEAKE Defendants**

64.     STIOS incorporates Paragraphs 1 through 63 herein by reference as if more fully set forth at length.

65.     The CHESAPEAKE Defendants received a benefit by having STIOS provide the aforementioned work, equipment, and services, the fair and reasonable value of the unpaid balance is in excess of TWO MILLION DOLLARS ($2,000,000.00).

66.     The CHESAPEAKE Defendants have been unjustly enriched by their receipt of the work, equipment, and services rendered to the detriment of STIOS, to which no corresponding benefit was given by the CHESAPEAKE Defendants for STIOS's performance.

67.     Despite STIOS's demands, the CHESAPEAKE Defendants have refused and continue to refuse to pay the sum due and owing to STIOS, which is an amount in excess of TWO MILLION DOLLARS ($2,000,000.00).

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against CHESAPEAKE

744676.7

ENGERY CORPORATION and CHESAPEAKE OPERATING, INC. in an amount in excess of TWO MILLION DOLLARS ($2,000,000.00), plus interest, costs, and such other relief this Honorable Court deems just and appropriate.

**COUNT III**
**Quantum Meruit**
**STIOS v. The CHESAPEAKE Defendants**

68.   STIOS incorporates Paragraphs 1 through 67 herein by reference as if more fully set forth at length.

69.   The CHESAPEAKE Defendants received a benefit by having STIOS provide the aforementioned work, equipment, and services for them as set forth herein, the fair and reasonable value of the unpaid balance is an amount in excess of TWO MILLION DOLLARS ($2,000,000.00).

70.   Despite STIOS's demands, the CHESAPEAKE Defendants have refused and continue to refuse to pay the sum due and owing to STIOS, which is an amount in excess of TWO MILLION DOLLARS ($2,000,000.00), plus interest.

71.   It would be unconscionable for the CHESAPEAKE Defendants to retain the value of STIOS's work, equipment, and services without making proper remuneration to STIOS, and accordingly, the CHESAPEAKE Defendants are liable to STIOS for the value of the work performed by STIOS.

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against CHESAPEAKE

744676.7

ENGERY CORPORATION and CHESAPEAKE OPERATING, INC. in an amount in excess of TWO MILLION DOLLARS ($2,000,000.00), plus interest, costs, and such other relief this Honorable Court deems just and appropriate.

## COUNT IV
### Promissory Estoppel
### STIOS v. The CHESAPEAKE Defendants

72.    STIOS incorporates Paragraphs 1 through 71 herein by reference as if more fully set forth at length.

73.    The CHESAPEAKE Defendants induced STIOS to perform certain work and expend time and effort for the benefit of the CHESAPEAKE Defendants by repeatedly promising to pay STIOS for all costs and expenses, including costs and expenses relating to the move-arounds of the crew and equipment.

74.    Said promises to pay for the contingency work described herein and the payment by the CHESAPEAKE Defendants for previous work, equipment and services reasonably induced STIOS to provide the aforementioned work, equipment, and services with the reasonable expectation that it would be fully compensated for its work and services, including to be paid for costs and expenses for move-arounds.

75.    STIOS justifiably relied upon this promise to its detriment in providing time, work, equipment, and services as set forth herein, but did not receive payment for the contingency work it performed.

744676.7

76.     The CHESAPEAKE Defendants knew, or should have known, that said promises would reasonably induce STIOS's reliance upon it.

77.     The CHESAPEAKE Defendants are estopped from reneging on said promises and failing to compensate and/or reimburse STIOS in full for its work, equipment, and services it rendered to the CHESAPEAKE Defendants as set forth herein.

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against CHESAPEAKE ENGERY CORPORATION and CHESAPEAKE OPERATING, INC. in an amount in excess of TWO MILLION DOLLARS ($2,000,000.00), plus interest, costs, and such other relief this Honorable Court deems just and appropriate.

## COUNT V
**Pennsylvania's Contractor and Subcontractor Payment Act**
**73 P.S. § 501 *et seq.***
**STIOS v. The CHESAPEAKE Defendants**

78.     STIOS incorporates Paragraphs 1 through 77 herein by reference as if more fully set forth at length.

79.     As set forth herein above, STIOS and the CHESAPEAKE Defendants are parties to construction contracts.

80.     STIOS is a "contractor" and the CHESAPEAKE Defendants are the "owners" per the definitions set forth in the Contractor and Subcontractor Payment Act, 73 P.S. § 502 (the "CSPA").

17

81.     STIOS submitted invoices to the CHESAPEAKE Defendants for the work, equipment, services, time, and effort it expended for the benefit of the CHESAPEAKE Defendants.

82.     STIOS performed its obligations in a good and workmanlike manner.

83.     The CHESAPEAKE Defendants have failed to remit full payment to STIOS in a timely manner in violation of the parties' agreements and the CSPA.

84.     For CHESAPEAKE Defendants' failure to comply with the terms of the CSPA, STIOS is entitled under the CSPA to a penalty equal to one percent (1%) per month of the amounts wrongfully withheld by the CHESAPEAKE Defendants, together with reasonable attorneys' fees and expenses as determined by the Court.

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against CHESAPEAKE ENGERY CORPORATION and CHESAPEAKE OPERATING, INC. in an amount in excess of TWO MILLION DOLLARS ($2,000,000.00), plus a penalty in the amount interest at a rate of 1% per month, costs/expenses, attorneys' fees, and such other relief as the Court deems appropriate and just.

744676.7

## COUNT VI
### Breach of Contract
### STIOS v. ACCESS and APPALACHIA (the "ACCESS Defendants")

85.     STIOS incorporates Paragraphs 1 through 84 herein by reference as if more fully set forth at length

86.     STIOS has fully and satisfactorily discharged all of its contractual duties by delivering the aforementioned work, equipment, and services to the ACCESS Defendants pursuant to the above-referenced agreements and the ACCESS Defendants have accepted STIOS's work, equipment and services without complaint.

87.     Despite STIOS's repeated demands for payment, the ACCESS Defendants have breached their contractual obligations to STIOS by failing to tender the principal amounts currently due and owing to STIOS, despite promising to pay for all work and contingencies.

88.     The ACCESS Defendants are contractually obligated to tender the balance due and owing to STIOS in an amount in excess of FORTY MILLION ($40,000,000.00).

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against ACCESS MIDSTREAM PARTNERS, L.P. and APPALACHIA MIDSTREAM SERVICES, L.L.C. in an amount in excess of FORTY MILLION ($40,000,000.00), plus

744676.7

interest, costs, and such other relief this Honorable Court deems just and appropriate.

## COUNT VII
### Unjust Enrichment
### STIOS v.  The ACCESS Defendants

89.     STIOS incorporates Paragraphs 1 through 88 herein by reference as if more fully set forth at length.

90.     The ACCESS Defendants received a benefit by having STIOS provide the aforementioned work, equipment, and services, the fair and reasonable value of the unpaid balance is in excess of FORTY MILLION ($40,000,000.00).

91.     The ACCESS Defendants have been unjustly enriched by their receipt of the work, equipment, and services rendered to the detriment of STIOS, to which no corresponding benefit was given by ACCESS for STIOS's performance.

92.     Despite STIOS's demands, the ACCESS Defendants have refused and continued to refuse to pay the sum due and owing to STIOS, which is an amount in excess of FORTY MILLION ($40,000,000.00).

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against ACCESS MIDSTREAM PARTNERS, L.P. and APPALACHIA MIDSTREAM SERVICES, L.L.C. in an amount in excess of FORTY MILLION ($40,000,000.00), plus

744676.7

interest, costs, and such other relief this Honorable Court deems just and appropriate.

### COUNT VIII
**Quantum Meruit**
**STIOS v. The ACCESS Defendants**

93.     STIOS incorporates Paragraphs 1 through 92 herein by reference as if more fully set forth at length.

94.     The ACCESS Defendants received a benefit by having STIOS provide the aforementioned work, equipment, and services for them as set forth herein, the fair and reasonable value of the unpaid balance is an amount in excess of FORTY MILLION ($40,000,000.00).

95.     Despite STIOS's demands, the ACCESS Defendants have refused and continue to refuse to pay the sum due and owing to STIOS, which is an amount in excess of FORTY MILLION ($40,000,000.00).

96.     It would be unconscionable for the ACCESS Defendants to retain the value of STIOS's work, equipment, and services without making proper remuneration to STIOS, and accordingly, the ACCESS Defendants are liable to STIOS for the value of the work performed by STIOS.

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against ACCESS MIDSTREAM PARTNERS, L.P. and APPALACHIA MIDSTREAM SERVICES,

744676.7

L.L.C. in an amount in excess of FORTY MILLION ($40,000,000.00), plus interest, costs, and such other relief this Honorable Court deems just and appropriate.

**COUNT IX**
**Promissory Estoppel**
**STIOS v. The ACCESS Defendants**

97.     STIOS incorporates Paragraphs 1 through 96 herein by reference as if more fully set forth at length.

98.     The ACCESS Defendants induced STIOS to perform certain work and expend time and effort for the ACCESS Defendants' benefit by repeatedly promising to pay STIOS for all work and contingencies, including but not limited to, costs relating to weather contingencies.

99.     Said promises to pay for the contingency work described herein and the payment by the ACCESS Defendants for previous work, equipment, and services reasonably induced STIOS to provide the aforementioned work, equipment, and services with the reasonable expectation that it would be fully compensated for its work and services, including to be paid for all contingencies, including weather contingency costs.

100. STIOS justifiably relied upon this promise to its detriment in providing time, work, equipment, and services as set forth herein, but did not receive payment for the contingency work it performed.

744676.7

101.   The ACCESS Defendants knew, or should have known, that said promises would reasonably induce STIOS's reliance upon it.

102.   The ACCESS Defendants are estopped from reneging on said promises and failing to compensate and/or reimburse STIOS in full for its work, equipment, and services it rendered to the ACCESS Defendants as set forth herein.

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against ACCESS MIDSTREAM PARTNERS, L.P. and APPALACHIA MIDSTREAM SERVICES, L.L.C. in an amount in excess of FORTY MILLION ($40,000,000.00), plus interest, costs, and such other relief this Honorable Court deems just and appropriate.

## COUNT X
### Pennsylvania's Contractor and Subcontractor Payment Act
### 73 P.S. § 501 *et seq.*
### STIOS v. The ACCESS Defendants

103.   STIOS incorporates Paragraphs 1 through 102 herein by reference as if more fully set forth at length.

104.   As set forth herein above, STIOS and the ACCESS Defendants are parties to construction contracts.

105.   STIOS is a "contractor" and the ACCESS Defendants are the "owners" per the definitions set forth in the CSPA, 73 P.S. § 502.

744676.7

106.   STIOS submitted invoices to the ACCESS Defendants for the work, equipment, services, time, and effort expended by STIOS for the ACCESS Defendants' benefit.

107.   STIOS performed its obligations in a good and workmanlike manner.

108.   The ACCESS Defendants have failed to remit full payment to STIOS in a timely manner in violation of the parties' agreements and the CSPA.

109.   For the failure of the ACCESS Defendants to comply with the terms of the CSPA, STIOS is entitled under the CSPA to a penalty equal to one percent (1%) per month of the amounts wrongfully withheld by the ACCESS Defendants, together with reasonable attorneys' fees and expenses as determined by the Court.

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against ACCESS MIDSTREAM PARTNERS, L.P. and APPALACHIA MIDSTREAM SERVICES, L.L.C. in an amount in excess of FORTY MILLION ($40,000,000.00), plus a penalty in the amount interest at a rate of 1% per month, costs/expenses, attorneys' fees, and such other relief as the Court deems appropriate and just.

## COUNT XI
## Fraud / Fraud in the Inducement
## STIOS v. The ACCESS Defendants

110.   STIOS incorporates Paragraphs 1 through 109 herein by reference as if more fully set forth at length.

744676.7

111.   The ACCESS Defendants intentionally engaged in a pattern of fraud and deceit by making certain promises and representations to STIOS, as more fully set forth herein, for the express purpose of inducing STIOS to modify its bid and remove all contingencies, including weather related contingency costs.

112.   The above-stated promises and representations concerned material facts in that STIOS would not have entered into agreements with the ACCESS Defendants for the fabrication and construction of pipelines in northeastern Pennsylvania if STIOS could not recover for all contingencies, including weather contingency costs, as promised and represented by the ACCESS Defendants.

113.   Upon information and belief, the ACCESS Defendants never intended to honor the above-stated promises and representations they made to STIOS during and subsequent to the submission of the bid proposals for the Projects.

114.   The ACCESS Defendants deliberately induced STIOS to enter into agreements for the fabrication and construction of pipelines by promising and representing that STIOS could recover for all contingencies, including but not limited to, weather contingency costs.

115.   Moreover, the ACCESS Defendants deliberately induced STIOS to continue work on the fabrication and construction of the pipelines by promising and representing that it would approve STIOS's change orders for all work and contingencies.

744676.7

116. STIOS's reliance on the ACCESS Defendants intentional misrepresentations regarding the payment of all contingencies, including all weather contingency costs, was reasonable and justified.

117. STIOS suffered substantial damages as more fully set forth herein as a result of the intentional fraudulent conduct of the ACCESS Defendants.

118. The fraudulent actions of the ACCESS Defendants were in reckless indifference to the rights of STIOS and were so extreme, outrageous and egregious as to warrant the imposition of punitive damages.

WHEREFORE, STI OILFIELD SERVICES, INC., respectfully requests that this Honorable Court enter judgment in its favor and against ACCESS MIDSTREAM PARTNERS, L.P. and APPALACHIA MIDSTREAM SERVICES, L.L.C. in an amount in excess of FORTY MILLION ($40,000,000.00), plus interest, costs, punitive damages, attorneys' fees, and such other relief this Honorable Court deems just and appropriate.

[*SIGNATURE PAGE ON NEXT PAGE*]

744676.7

Respectfully submitted,

ROSENN, JENKINS & GREENWALD, LLP

BY: /S/ THOMAS J. CAMPENNI, ESQUIRE
     ROBERT D. SCHAUB, ESQUIRE
     PA. I.D. NO. 42466
     HOWARD M. LEVINSON, ESQUIRE
     PA. I.D. NO. 19200
     THOMAS J. CAMPENNI, ESQUIRE
     PA. I.D. NO. 87809
     15 South Franklin Street
     Wilkes-Barre, PA  18711-0075
     (570) 826-5652 – telephone
     (570) 706-3437 – facsimile
     rschaub@rjglaw.com
     hlevinson@rjglaw.com
     tcampenni@rjglaw.com

     ATTORNEYS FOR PLAINTIFF,
     STI OILFIELD SERVICES, INC.

744676.7