IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STI OILFIELD SERVICES, INC., :
:
    Plaintiff, :
:
v. : 3:13-CV-02923
: (JUDGE MARIANI)
ACCESS MIDSTREAM :
PARTNERS, L.P., et al., :
:
    Defendants. :

## MEMORANDUM OPINION

### I. INTRODUCTION & PROCEDURAL HISTORY

This matter concerns a dispute over a series of contracts for the construction of natural gas pipelines in Northeast Pennsylvania. Plaintiff, STI Oilfield Services, Inc., initiated this diversity action on December 4, 2013, with the filing of a Complaint. (Doc. 1). The Complaint alleged that Defendants, Access Midstream Partners, L.P., Appalachia Midstream Services, L.L.C., Chesapeake Energy Corporation, and Chesapeake Operating, Inc., were liable to Plaintiff under a variety of theories including breach of contract, unjust enrichment, quantum meruit, promissory estoppel, fraud, and the Pennsylvania Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. § 501 *et seq.* (Doc. 1). After a Motion to Dismiss and two Motions for Summary Judgment were resolved, the following claims remained pending: (1) a breach of contract claim against Chesapeake Energy Corporation and Chesapeake Operating (collectively the "Chesapeake Defendants"), (Count I); (2) a

claim under the CASPA against the Chesapeake Defendants, (Count V); (3) a breach of contract claim against Access Midstream Partners and Appalachia Midstream Services (collectively the "Access Defendants"), (Count VI); and (4) a claim under the CASPA against the Access Defendants, (Count X). (Docs. 1, 50, 125, 127).

A jury trial was scheduled to commence on October 30, 2017, to resolve the remaining claims. (Doc. 132). Then, on July 19, 2017, more than three and a half years after this matter was commenced, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. 135). On September 1, 2017, after partially briefing the Motion, the case was stayed to allow the parties to engage in private mediation. (Docs. 145, 146). After mediation proved unsuccessful, the parties finished briefing the Motion to Dismiss. This Motion is presently pending before the Court and is now ripe for resolution. For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and, as a result, dismiss this action in its entirety.

## II. BACKGROUND

Through the present Motion, Defendants primarily contend that there is not complete diversity between Plaintiff and the Access Defendants. Defendants assert that Access Midstream Partners is a publicly-traded master limited partnership. Master limited partnerships "are limited partnerships or limited liability companies whose ownership interests, called 'common units,' are publicly traded." *Grynberg v. Kinder Morgan Energy*

*Partners, L.P.*, 805 F.3d 901, 903-04 (10th Cir. 2015). "[T]he citizenship of partnerships and other unincorporated associations is determined by the citizenship of its partners or members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *see also Grynberg*, 805 F.3d at 906 (holding that the citizenship of a master limited partnership is determined by the citizenship of all unitholders).

According to Defendants, Access Midstream Partners has 187,000,000 outstanding common units, (Doc. 151 at 6), and 40% of its limited partnership is held by the public, (Doc. 135-1 at ¶ 4). Defendants also assert that 4,600 unit holders "used a State of Texas business or residential address." (*Id.* at ¶ 5). From this, Defendants argue that Access Midstream Partners is a citizen of Texas for diversity jurisdiction purposes and thus is not diverse from Plaintiff, who is also a citizen of Texas. (Doc. 140 at 5-8).

The Motion further contends that Appalachia Midstream Services, L.L.C., is also a citizen of Texas for diversity citizenship purposes. (Doc. 140 at 8-9). As the Third Circuit has explained,

> the citizenship of an LLC is determined by the citizenship of its members. And as with partnerships, where an LLC has, as one of its members, another LLC, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be" to determine the citizenship of the LLC.

*Zambelli Fireworks Mfg. Co.*, 592 F.3d at 420 (quoting *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)). Defendants assert that Appalachia Midstream Services has only one member, Access MLP Operating, L.L.C., which itself also has only one member, Access

3

Midstream Partners. Thus, Defendants argued that Appalachia Midstream Services has the same citizenship as Access Midstream Partners and thus is not diverse from Plaintiff. (Doc. 140 at 8-9).

In its opposition, Plaintiff did not dispute the fact that it is not diverse from the Access Defendants. (Doc. 144 at 2). Nevertheless, relying on *Kaplan v. Industrial Risk Insurers*, 86 F.R.D. 484 (E.D. Pa. 1980), Plaintiff proposed that the Court allow it to (1) dismiss the Access Defendants and (2) proceed only against all of Access Midstream Partners' diverse limited partners. (Doc. 144 at 5-10). On May 15, 2018, after holding a conference call with the parties, this Court set a deadline for Plaintiff to file a Motion for Leave to Amend its Complaint. (Doc. 159). Then, in a letter dated June 11, 2018, Plaintiff notified the Court that, due to an unforeseen legal issue, Plaintiff would not seek to amend its Complaint and was therefore abandoning its arguments based on *Kaplan v. Industrial Risk Insurers*. (Doc. 162).

### III. DISCUSSION

Pursuant to 28 U.S.C. § 1332, district courts have subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "This statute and its predecessors have consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v.*

4

*Kroger*, 437 U.S. 365, 373, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978) (emphasis in original) (footnote omitted). As it is undisputed that Plaintiff is not diverse from the Access Defendants, the Court lacks subject matter jurisdiction over this action. With that issue resolved, the Court turns to the two secondary matters raised in Defendants' Motion to Dismiss: (1) whether the Access Defendants are dispensable parties such that the claims against the Chesapeake Defendants should proceed in federal court; and (2) whether this Court should vacate all prior orders and judgments entered in this action. The Court will address each of these issues in turn.

### A. Dispensability of the Access Defendants

Although the presence of the Access Defendants destroys diversity and divests this Court of subject matter jurisdiction, it does not necessarily follow that the entire case must be dismissed. Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party." Although this rule is generally concerned with misjoinder of parties, "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989); *see also CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 382 n.6 (3d Cir. 2004) ("[I]t is well established that courts, both district and circuit alike, have the power under Fed.R.Civ.P. 21 to dismiss dispensable parties to the suit in order to preserve diversity"). "A district court has broad discretion in deciding

whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Slater v. Hoffman-La Roche Inc.*, 771 F. Supp. 2d 524, 529 (E.D. Pa. 2011).

Defendants argue that the Access Defendants are dispensable parties, and, consequently, the Court should dismiss the claims against the Access Defendants but proceed with the claims against the Chesapeake Defendants. (Doc. 140 at 10-12). Defendants primarily rely on the fact that Plaintiff's claims against the Chesapeake Defendants are separate and distinct from Plaintiff's claims against the Access Defendants. That is, the claims against the Chesapeake Defendants involve a specific set of contracts—the "Rome" and "Oilcan" contracts—and Plaintiff has not alleged that the Access Defendants were involved with those contracts.

Plaintiff, on the other hand, argues that the Access Defendants are indispensable parties. (Doc. 144 at 10-13). Plaintiff notes that many of the witnesses in this case have information concerning the claims against both the Chesapeake Defendants and the Access Defendants. Plaintiff also argues that at times it is unclear whether a particular individual worked for the Chesapeake Defendants or the Access Defendants. Further, Plaintiff contends that it will suffer prejudice if this lawsuit is broken up because each set of Defendants will be able to shift blame onto the absent Defendants at trial.

To determine if the Access Defendants are indispensable, the Court turns to Federal Rule of Civil Procedure 19. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 297 (3d Cir. 1980) ("Although the district court's authority to dismiss non-diverse parties who are not

6

indispensable derives from Fed.R.Civ.P. 21, the primary factors to be considered by the district court in determining whether a party is indispensable are listed in Fed.R.Civ.P. 19"), *disagreed with on other grounds by Newman-Green, Inc.*, 490 U.S. at 833 n. 7; *see also Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979) (noting that a "district court is precluded from retaining diversity jurisdiction by dismissing a nondiverse party if that party is indispensable under Fed.R.Civ.P. 19"); *Rashid v. Kite*, 957 F. Supp. 70, 72-73 (E.D. Pa. 1997). Rule 19 provides, in part:

> **(a) Persons Required to Be Joined if Feasible.**
>
> > **(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> >
> > > **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> > >
> > > **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > >
> > > > **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> > > >
> > > > **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> . . .
>
> **(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

7

> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> **(2)** the extent to which any prejudice could be lessened or avoided by:
>
>> **(A)** protective provisions in the judgment;
>>
>> **(B)** shaping the relief; or
>>
>> **(C)** other measures;
>
> **(3)** whether a judgment rendered in the person's absence would be adequate; and
>
> **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19.

"Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). A court "first must determine whether the absent [parties] should be joined as 'necessary' parties under Rule 19(a)." *Id.* "As Rule 19(a) is stated in the disjunctive, if either subsection is satisfied, the absent party is a necessary party that should be joined if possible." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998). "If they should be joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship (as would be the case here), [a court] next must determine whether the absent parties are 'indispensable' under Rule 19(b)." *Gen. Refractories Co.*, 500 F.3d at

312. If a necessary party who cannot be joined is indispensable, "the action cannot go forward." *Id.*

Here, the Court concludes that Access Midstream Partners is a necessary party under Rule 19(a)(1)(A). This subsection of Rule 19 concerns itself with "whether complete relief can be accorded to the parties to the action in the absence of the unjoined party." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993). Previously, when ruling on the Chesapeake Defendants' Motion for Summary Judgment, this Court stated the following:

> It is undisputed that a representative of Plaintiff, Jerrold Gill, signed all of the Rome and Oilcan contracts. Beyond that, it is undisputed that the Rome contracts had four other signature lines, and the signature lines for at least two of the following three individuals have signatures placed next to the following names: Jimmy Rowell, Andrew Bischoff, and Patrick Myers. Similarly, it is also undisputed that the Oilcan contracts, which had one signature page, have signatures placed next to the following names: Jimmy Rowell, Fernando Rodriguez, Joel Moore, and Patrick Myers. The contracts themselves, however, provide no clear indication of who these individuals represent.
>
> First, the company name on the contracts—"Chesapeake Midstream Energy"—is not the name of any of the entities that are party to this lawsuit. The name appears to be a combination of Chesapeake Midstream Partners[1] and Chesapeake Energy Corporation. Second, the CMD acronym associated with the signatures is nowhere defined in the contracts and is not an obvious acronym for Chesapeake Midstream Partners. Third, the statement above the signatures—"Chesapeake Approval"—provides no indication which Chesapeake entity/entities is approving the contracts. Finally, the presence of the Chesapeake Energy logo on the front of the contracts would seem to indicate that the contracts were connected with Chesapeake Energy

---

[1] On July 24, 2012, Chesapeake Midstream Partners changed is corporate name to Access Midstream Partners, L.P. (Doc. 79 at ¶¶ 18, 20; Doc. 100 at ¶ 18, 20).

Corporation. The remainder of the record provides no clarity. It is devoid of any reference to who these individuals are, who they work for, and which Chesapeake entity/entities they were representing, if any, when they signed the contracts.

(Doc. 124 at 10-11). Accordingly, this Court concluded that there was a dispute of fact as to who was party to the Rome and Oilcan contracts with Plaintiff.

Further, it is Defendants' position that Access Midstream Partners is party to the Rome and Oilcan contracts. Specifically, both the Chesapeake Defendants and the Access Defendants asserted in their Answers that "Access, formerly known as Chesapeake Midstream Partners, L.P., contracted with Plaintiff in early 2012 to perform work on the Rome and Oilcan gas gathering systems." (Doc. 53 at ¶ 12; Doc. 54 at ¶ 12).

Because it is unclear who is a party to the Rome and Oilcan contracts—Chesapeake Energy Corporation, Chesapeake Operating, Access Midstream Partners, or some combination thereof—Plaintiff may not be able to obtain complete relief in the absence of Access Midstream Partners. Indeed, the Chesapeake Defendants readily admit that, at trial, they will assert that Access Midstream Partners, and not the Chesapeake Defendants, was party to the Rome and Oilcan contracts. (Doc. 140 at 11-12). If the jury believes the Chesapeake Defendants' arguments, Plaintiff will not be accorded complete relief if Access Midstream Partners is not present at the trial. As a result, Access Midstream Partners is a necessary party under Rule 19(a)(1)(A). *See Rashid*, 957 F. Supp. at 74 ("Generally, in breach of contract actions, all parties to the contract should be joined"); *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831, 836 n.7 (D. Del. 1978)

10

("In general, where rights sued upon arise from a contract, all parties to the contract must be joined"); *see also Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party"); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997) ("As a direct party to the contract which is under dispute, Karabu is a necessary party to this litigation for at least three reasons").

Because Access Midstream Partners is a necessary party under Rule 19(a), the Court must now determine if it is an indispensable party under Rule 19(b). *See Gen. Refractories Co.*, 500 F.3d at 312. As laid out above, Rule 19(b) provides four factors a Court should consider when "determin[ing] whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). In *General Refractories Company v. First State Insurance Company*, the Third Circuit discussed the four factors listed in Rule 19(b):

> The first and second factors under Rule 19(b) are "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties," and to what extent such prejudice "can be lessened or avoided." Notably, the first factor under Rule 19(b) "overlaps considerably with the Rule 19(a) analysis."

500 F.3d at 320 (first quoting FED. R. CIV. P. 19(b)(1) & (2), then quoting *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 641 n.4 (3d Cir. 1998)). As to the third factor, the Court observed that this element allows the Court to consider "whether a judgment rendered in the person's absence will be adequate," and further observed that it "allows the court to

consider whether the relief it grants will prove an adequate remedy for the plaintiff." *Id.* at 320-321. The Court, however, admonished that "[t]he right to contribution and indemnity should not . . . be considered to cause inadequacy of the resulting judgment." *Id.* at 321. Lastly, with respect to the fourth factor—"whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder"—the Court viewed Rule 19 as "counsel[ing] that courts should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible." *Id.*

Upon consideration of these factors, the Court concludes that Access Midstream Partners is an indispensable party and, as such, this matter should be dismissed in its entirety. With respect to the first factor, Plaintiff could be prejudiced by a federal judgment entered in Access Midstream Partners' absence. Specifically, a federal jury may find that Access Midstream Partners, and not the Chesapeake Defendants, was a signatory to the Rome and Oilcan contracts and thus find in favor of the Chesapeake Defendants. At the same time, a state jury may find that the Chesapeake Defendants, and not the Access Defendants, were signatories to the Rome and Oilcan contracts and thus find in favor of the Access Defendants. Turning to the second factor, the Court is not aware of any way this prejudice could be lessened or avoided except to allow Plaintiff to proceed against the Chesapeake Defendants and the Access Defendants at the same time in a single forum.

For many of the same reasons, the third factor also weighs in favor of finding that Access Midstream Partners is indispensable. Specifically, a judgment in favor of the Chesapeake Defendants based upon a jury determination that Access Midstream Partners was the only signatory to the Rome and Oilcan contracts would be an inadequate remedy for Plaintiff. Finally, turning to the fourth factor, Plaintiff would have an adequate remedy if this Court were to dismiss the entire action. Pennsylvania has specifically provided, at 42 Pa. C.S.A. § 5103(b), that "[w]here a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth" within the statute. Here, the Court finds that, if this matter is dismissed for lack of subject matter jurisdiction, Plaintiff will be able to proceed against the Defendants in Pennsylvania state court pursuant to 42 Pa. C.S.A. § 5103. *See Williams v. F.L. Smithe Machine Co.*, 577 A.2d. 907, 909 (Pa. Super. 1990). Accordingly, upon consideration of the above factors, the Court holds that Access Midstream Partners is an indispensable party under Rule 19(b).

The Court's ruling in this respect breaks no new ground. Indeed, "[i]t is well established that a contracting party is the paradigm of an indispensable party for contract claims." *Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co.*, 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (quotation marks omitted); *see also Davis Cos. v. Emerald Casino, Inc.*, 268

13

F.3d 477, 484 (7th Cir. 2001); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 252 (4th Cir. 2000); *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991). Further, such a holding is in line with "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies," which is embodied in Rule 19. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968).

Nevertheless, Defendants argue that the Access Defendants are not indispensable parties because Plaintiff has not brought any claims against the Access Defendants for the Rome and Oilcan contracts. (Doc. 140 at 10-12; Doc. 151 at 8-10). Defendants, however, have cited no authority for the proposition that parties are dispensable if there are no claims yet asserted against them. This is not surprising considering that Rule 19 is ordinarily concerned with the joinder of individuals or entities that are not yet party to the action and thus do not yet have any claims brought against them. As such, a rule that a party is dispensable if they do not yet have particular claims asserted against them would make little sense. *See* FED. R. CIV. P. 19(a)(1).

As discussed above, it is the Defendants' position that Access Midstream Partners is party to the Rome and Oilcan contracts and this Court has concluded that there is a dispute of fact as to who is party to the Rome and Oilcan contracts. Further, Plaintiff has noted that if this matter is dismissed, it would seek to amend its Complaint in state court to assert claims against the Access Defendants on the Rome and Oilcan contracts. (Doc. 144 at 13).

14

Accordingly, the fact that Plaintiff has not presently brought a claim against the Access Defendants on the Rome and Oilcan contracts is immaterial.[2]

Finally, Defendants argue that, because the claims based on the Rome and Oilcan contracts are separate and distinct from Plaintiff's other claims, this matter should proceed in two separate trials. (Doc. 151 at 11-13). This argument confuses the issues. The Court's inquiry is not whether Plaintiff's claims based on the Rome and Oilcan contracts should be tried separately from Plaintiff's other claims. Instead, the proper question is whether one or both of the Access Defendants are indispensable parties to Plaintiff's claims arising out of the Rome and Oilcan contracts. Because the Court answers this latter question in the affirmative, the Court must dismiss the entire action.

In sum, the Court finds that Access Midstream Partners is a necessary and indispensable party under Rule 19. Accordingly, the Court will decline to dismiss only the Access Defendants and will instead dismiss this action in its entirety.

### B. Prior Orders and Judgments

Finally, Defendants argue that this Court should vacate all its prior orders and judgments because it has lacked subject matter jurisdiction since the initiation of this

---

[2] Similarly, Defendants argue that Plaintiff is barred by the statute of limitations from asserting claims against the Access Defendants for the Rome and Oilcan contracts. (Doc. 151 at 8). Defendants, however, have not briefed this issue beyond a passing reference to a prior filing. Thus, because Defendants have not presented arguments on this issue, the Court declines to address it. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived"); *see also* Local Rule 7.8 ("No brief may incorporate by reference all or any portion of any other brief").

lawsuit. (Doc. 140 at 12). Plaintiff opposes this request and argues that the Court need not vacate any prior orders or judgments. (Doc. 144 at 13-15).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1868). Defendants ask this Court to decide what legal effect its prior orders should have moving forward. As this Court has determined that it lacks subject matter jurisdiction, it is without power to rule on this issue. This Court, therefore, will leave it to the state court to decide what effect, if any, this Court's prior orders have on this litigation moving forward.

## IV. CONCLUSION

For the reasons outlined above, this Court will grant in part and deny in part Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and dismiss this matter in its entirety. A separate Order follows.

_____
Robert D. Mariani
United States District Judge